**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SEGA CORPORATION,

     Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A HERETO,

     Defendants.

Case No. 24-cv-10460

Judge

**COMPLAINT**

Plaintiff, SEGA CORPORATION ("SEGA") ("Plaintiff"), by undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified in Schedule A attached hereto (collectively, "Defendants"), and hereby alleges as follows:

**JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.; 28 U.S.C. § 1338(a) - (b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products including bearing counterfeit versions of Plaintiff's SHIN MEGAMI TENSEI Trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois.

### INTRODUCTION

3.    This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered and common law trademarks (the "Counterfeit Products").

4.    Defendants created numerous Internet Stores and designed them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence or series of transactions or occurrences. Defendants attempt to avoid liability by going to great

lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademarks as well as to protect unknowing consumers from purchasing unauthorized products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

5.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

**THE PLAINTIFF**

6.      Plaintiff SEGA is a leading Japanese video game developer and is headquartered at Sumitomo Fudosan Osaki Garden Tower 1-1-1 Nishi-Shinagawa, Shinagawa-ku, Tokyo, 141-0033 Japan.

7.      Plaintiff manages the licensing, sale and marketing of SHIN MEGAMI TENSEI Products and is in the business of developing, marketing, selling, distributing and licensing SHIN MEGAMI TENSEI branded products. SEGA has established itself as one of the video game industry's most consistent, celebrated brands with proven success across a variety of genres and platforms. SEGA creates exceptional, critically acclaimed interactive entertainment for a wide spectrum of consumers everywhere. SEGA is renowned for delivering unforgettable, story-driven gameplay experiences for dedicated and enthusiastic fans around the world. Plaintiff is the

3

official source of SHIN MEGAMI TENSEI products including clothing items and other consumer goods.

8.      Plaintiff owns U.S. Trademark Registration No. 5,809,174 for the P5 PERSONA 5 mark in International Class 9; No. 6,132,788 for the P55 PERSONA 5 STRIKERS mark in International Class 9; No. 6,868,492 for the P5 PERSONA mark in International Class 28; No. 2,237,170 for the "PERSONA" word mark; No. 3,012,703 for the "SHIN MEGAMI TENSEI" word mark; No. 3,060,783 for the "SMT" word mark; No. 3,175,004 for the "DIGITAL DEVIL SAGA" word mark; No. 3,300,019 for the "ODIN SPHERE" word mark; No. 3,311,295 for the "TRAUMA CENTER" word mark; No. 3,382,974; for the "GROWLANSER" word mark; No. 3,414,960 for the "DEVIL SUMMONER" word mark; No. 3,524,051 for the "ETRIAN ODYSSEY" word mark; No. 5,731,749 for the "CATHERINE" design and word mark; and No. 5,979,078 for the "SHIN MEGAMI TENSEI LIBERATION" word mark. Plaintiff also has common law rights to the "P5 Persona 5", "P55 PERSONA 5 STRIKERS", "P5 PERSONA", "PERSONA", "SHIN MEGAMI TENSEI", "SMT", "DIGITAL DEVIL SAGA", "ODIN SPHERE", "TRAUMA CENTER", "GROWLANSER", "DEVIL SUMMONER" , "ETRIAN ODYSSEY", "CATHERINE", and "SHIN MEGAMI TENSEI LIBERATION" names and marks (collectively, the "SHIN MEGAMI TENSEI Trademarks").

9.      The above registrations for the SHIN MEGAMI TENSEI marks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the above-referenced marks are attached hereto as Exhibit 1.

11.     The SHIN MEGAMI TENSEI Trademarks are distinctive and identify merchandise as goods from Plaintiff or its duly authorized licensees.

4

12.     The SHIN MEGAMI TENSEI Trademarks have been continuously used and never abandoned.

13.     Plaintiff's SHIN MEGAMI TENSEI Trademarks are exclusive to Plaintiff and are displayed extensively on Plaintiff's Products and in Plaintiff's marketing and promotional materials.  Plaintiff's SHIN MEGAMI TENSEI Trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiff at great expense.  In fact, Plaintiff expends significant resources annually in advertising, promoting and marketing featuring Plaintiff's SHIN MEGAMI TENSEI Trademarks. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, a website, social media sites and point of sale materials.  Because of these and other factors, Plaintiff's SHIN MEGAMI TENSEI Trademarks have become famous worldwide.

14.     Plaintiff's SHIN MEGAMI TENSEI Trademarks are distinctive when applied to Plaintiff's products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its Trademarks are manufactured to the highest quality standards.  Plaintiff's SHIN MEGAMI TENSEI Trademarks have achieved fame and recognition, which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with Plaintiff's SHIN MEGAMI TENSEI Trademarks is incalculable and of inestimable value to Plaintiff.

15.     Plaintiff's SHIN MEGAMI TENSEI Trademarks qualify as famous marks as used in 15 U.S.C. §1125 (c)(1) and have been continuously used and never abandoned.

16.     Plaintiff has expended substantial time, money and other resources in developing, advertising and otherwise promoting their Trademarks.  As a result, products bearing the SHIN

5

MEGAMI TENSEI Trademarks are widely recognized and exclusively associated by consumers, the public and the trade as being products sourced from Plaintiff.

## THE DEFENDANTS

17.     Defendants are individuals and business entities who, upon information and belief, primarily reside in foreign jurisdictions.  Defendants conduct business throughout the United States, including Illinois and within this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendants' Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products to consumers within the United States, including Illinois and this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

18.     The success of Plaintiff's brand has resulted in its counterfeiting.  Plaintiff has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendants' Internet Stores, which were offering for sale, selling, and importing counterfeit products to consumers in this Judicial District and throughout the United States.  Defendants have persisted in creating the Defendants' Internet Stores.  Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in 2021 was over $3.3 billion, up from $1.3 billion in 2020.  According to a 2021 study on the impact of the sale of fraudulent goods entitled "The Counterfeit Silk Road - Impact of Counterfeit Consumer Products Smuggled into the United States" (the 2021 study),

Internet websites like the Defendant Internet Stores are also estimated to contribute to over 653,000 lost jobs for legitimate businesses and broader economic damages such as lost wages in an amount over $36 billion and a loss of federal and state tax revenue of over $13.5 billion every year.

19.     Upon information and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products.  Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and Aliexpress.  Defendants' Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard® and PayPal® logos.

20.     Plaintiff has not licensed nor authorized Defendants to use its Trademarks and none of the Defendants are authorized retailers of its genuine products.

21.     Upon information and belief, Defendants deceive unknowing consumers by using the Plaintiff's SHIN MEGAMI TENSEI Trademarks without authorization within the content, text, and/or meta tags of its websites to attract various search engines looking for websites relevant to consumer searches for Plaintiff's products.  Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendants' Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for Plaintiff's genuine products.  Further,

Defendants utilize similar illegitimate SEO tactics to propel new online marketplace account listings to the top of search results after others are shut down.

22.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet Stores.  For example, many of Defendants' names and physical addresses used to register their Online Marketplace Accounts are incomplete, contain randomly typed letters or fail to include cities or states.  Other Defendants' Online Marketplace Accounts use privacy services that conceal the owners' identity and contact information.  Upon information and belief, some of the tactics used by the Defendants to conceal their identities and the scope and interworking of their counterfeit operations to avoid being shut down include regularly creating new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other fictitious names and addresses.

23.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores.  For example, some of the Defendants' websites have identical layouts, even though different aliases were used to register their respective online marketplace accounts.  In addition, the counterfeit products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit products were manufactured by a common source and that Defendants are interrelated. The Defendants' Internet Stores also include other notable common features, including use of the same online marketplace account registration patterns, unique shopping cart platforms, similar payment and check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume

sales discounts, similar hosting services, similar name servers and the use of the same text and images.

24.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, when counterfeiters like Defendants receive notice of a lawsuit they will often register new online marketplace accounts under new aliases and move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters will also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. The 2021 study indicated that the Internet has fueled explosive growth in the number of small packages of counterfeit goods shipped through the mail and express carriers. This growth closely correlates to the growth of the ecommerce industry which now make up 15.4% of all retail transactions as reported by the Census Bureau of the U.S. Department of Commerce.

25.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant and Aliexpress accounts behind layers of payment gateways so that they can continue to operate in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their Aliexpress accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of Aliexpress transaction logs from prior similar cases indicate that offshore counterfeiters regularly move funds from U.S.-based Aliexpress accounts to China-based bank accounts outside the jurisdiction of this Court.

26.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation and potential new lawsuits.

27.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's SHIN MEGAMI TENSEI Trademarks in connection with the advertisement, distribution, offering for sale and sale of counterfeit products into the United States and Illinois over the Internet.  Each Defendants' Internet Stores offer shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell counterfeit products into the United States, including Illinois.

28.     Defendants' use of Plaintiff's SHIN MEGAMI TENSEI Trademarks in connection with the advertising, distribution, offering for sale and sale of counterfeit products, including the sale of counterfeit products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-28 of this Complaint.

30.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiff's Trademarks in connection with the sale, offering for sale, distribution and/or advertising of infringing goods. Plaintiff's SHIN MEGAMI TENSEI Trademarks are highly distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under their Trademarks.

10

31.     Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products in connection with Plaintiff's SHIN MEGAMI TENSEI Trademarks without Plaintiff's permission.

32.     Plaintiff owns the SHIN MEGAMI TENSEI Trademarks (Exhibit 1). The United States Registrations for Plaintiff's SHIN MEGAMI TENSEI Trademarks are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in their Trademarks and are willfully infringing and intentionally using Plaintiff's SHIN MEGAMI TENSEI Trademarks on counterfeit products. Defendants' willful, intentional, and unauthorized use of Plaintiff's SHIN MEGAMI TENSEI Trademarks are likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit products among the general public.

33.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

34.     The injuries and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell and sale of counterfeit Plaintiff's products.

35.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known Trademarks.

## COUNT II
## COMMON LAW TRADEMARK INFRINGEMENT

36.     Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-35 of this Complaint.

11

37.     Defendants' actions described above constitute willful, intentional and unauthorized use of the Plaintiff's SHIN MEGAMI TENSEI Trademarks as protected by common law.

38.     Defendants' search result pages on Aliexpress infringe Plaintiff's Trademark because the algorithm used suggests and then recognizes the "P5 Persona 5", "P55 PERSONA 5 STRIKERS", "P5 PERSONA", "PERSONA", "SHIN MEGAMI TENSEI", "SMT", "DIGITAL DEVIL SAGA", "ODIN SPHERE", "TRAUMA CENTER", "GROWLANSER", "DEVIL SUMMONER" , "ETRIAN ODYSSEY", "CATHERINE", and "SHIN MEGAMI TENSEI LIBERATION" marks as keywords which are used to display infringing SHIN MEGAMI TENSEI products and other competing products for sale.

39.     Defendants' sponsored link advertisements on third-party search engines, such as Google and Bing, infringe the Plaintiff's Trademark because Defendants pay search engines for the right to use "P5 Persona 5", "P55 PERSONA 5 STRIKERS", "P5 PERSONA", "PERSONA", "SHIN MEGAMI TENSEI", "SMT", "DIGITAL DEVIL SAGA", "ODIN SPHERE", "TRAUMA CENTER", "GROWLANSER", "DEVIL SUMMONER" , "ETRIAN ODYSSEY", "CATHERINE", and "SHIN MEGAMI TENSEI LIBERATION" as keywords which causes Defendants' advertisements for SHIN MEGAMI TENSEI to appear in search results on third-party search engines.

40.     Defendants' actions generate initial interest confusion by attracting customers browsing the Internet using Plaintiff's Trademark, thereby acquiring goodwill that belongs to Plaintiff. See, *Promatek Industries v. Equitrac Corp*, 300 F.3d 808 (7th Cir. 2002).

41.     Defendants' offerings of SHIN MEGAMI TENSEI Products for sale on their Online Marketplace listings infringe Plaintiff's SHIN MEGAMI TENSEI Trademarks.

42.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful use of Plaintiff's SHIN MEGAMI TENSEI Trademarks in the advertisement, promotion, offer to sell, and sale of third-party products.

43.     Defendants' activities constitute trademark infringement of Plaintiff's common law trademark rights. Such infringement has been willful.

44.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill and acquired secondary meaning of its well-known Trademarks.

45.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful actions. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SHIN MEGAMI TENSEI Trademarks.

## COUNT III
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

46.     Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-45 of this Complaint.

47.     Defendants' promotion, marketing, offering for sale and sale of counterfeit products have created and are creating a likelihood of confusion, mistake and deception among the general public as to the affiliation, connection or association with Plaintiff or the origin, sponsorship or approval of Defendants' counterfeit products by Plaintiff.

48.     By using Plaintiff's SHIN MEGAMI TENSEI Trademarks in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products.

49.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit products to the general public under 15 U.S.C. §§ 1114, 1125.

50.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of their brand.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510/1, et seq.)

51.     Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-50 of this Complaint.

52.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit products as those of Plaintiff, causing likelihood of confusion and/or misunderstanding as to the source of its goods, causing likelihood of confusion and/or misunderstanding as to an affiliation, connection or association with genuine products, representing that their products have Plaintiff's approval when they do not and engaging in other conduct which creates likelihood of confusion or misunderstanding among the public.

53.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq.

54.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

14

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using Plaintiff's SHIN MEGAMI TENSEI Trademarks or any confusingly similar trademark or name in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's SHIN MEGAMI TENSEI Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under their Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing Plaintiff's SHIN MEGAMI TENSEI Trademarks and damaging Plaintiff's reputation and goodwill;

    e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered including Plaintiff's SHIN MEGAMI TENSEI Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof; and

f. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or any online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit products;

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through f, above;

3) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer and Aliexpress, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, and web hosts for the Defendants' Online Marketplace Accounts, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit products using Plaintiff's SHIN MEGAMI TENSEI Trademarks including any accounts associated with the Defendants listed in Schedule A; and

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit products using Plaintiff's SHIN MEGAMI TENSEI Trademarks;

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's SHIN MEGAMI TENSEI Trademarks are increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, Plaintiff is awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of its Trademarks;

6) That Plaintiff is awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.


Dated: October 16, 2024          Respectfully submitted,


By:     */s/ Michael A. Hierl*
        Michael A. Hierl (Bar No. 3128021)
        William B. Kalbac (Bar No. 6301771)
        Robert P. McMurray (Bar No. 6324332)
        John Wilson (Bar No. 6341294)
        Hughes Socol Piers Resnick & Dym, Ltd.
        Three First National Plaza
        70 W. Madison Street, Suite 4000
        Chicago, Illinois 60602
        (312) 580-0100 Telephone
        mhierl@hsplegal.com

        Attorneys for Plaintiff
        SEGA CORPORATION

17

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing

Complaint was filed electronically with the Clerk of the Court and served on all counsel of

record and interested parties via the CM/ECF system on October 16, 2024.


                                                     s/Michael A. Hierl